# Commonwealth v. Deery, Appellant.

*Criminal law—Sale of diseased animals—State Live Stock Sanitary Board—Act of May 21, 1895, P. L. 91.*

1. The Act of May 21, 1895, P. L. 91, entitled "An Act to establish the State Live Stock Sanitary Board of Pennsylvania, and to provide for the control and suppression of dangerous, contagious or infectious diseases of animals," does not authorize an officer and agent of the board to establish a quarantine of cattle, nor can the board delegate to its agents or employees the authority to declare and enforce a quarantine of cattle.

2. The act of 1895 did not invest the board with power to make a regulation which would deprive an owner of quarantined cattle of the right to sell or transfer his title to another who was willing to pay the price agreed upon and take the chances of the cattle being restored to health, or being lawfully relieved from quarantine. The mere sale of the cattle, so long as they remained physically confined, did not involve a violation of any regulation which the statute authorized the board to make.

Argued Nov. 22, 1910. Appeal, No. 1, Oct. T., 1910, by defendant, from order of Q. S. Chester Co., Jan. T., 1909, No. 49, refusing to quash the indictment in case of Commonwealth v. George K. Deery. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Indictment for violating the act of May 21, 1895, in selling quarantined cattle.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in refusing to quash the indictment.

*George B. Johnson,* for appellant.—The sale of domestic animals is not a crime: Eshleman v. Union Stock-Yards Co., 222 Pa. 20; Com. v. Kephart, 17 Pa. Dist. Rep. 1051.

*H. H. Gilkyson* and *A. H. Woodward,* with them *Robert S. Gawthrop,* for appellee.

OPINION BY PORTER, J., April 17, 1911:

The defendant appeals from his conviction in the court below, upon an indictment which the commonwealth asserts was founded upon the provisions of the Act of May 21, 1895, P. L. 91, entitled, "An act to establish the State Live Stock Sanitary Board of Pennsylvania and to provide for the control and suppression of dangerous, contagious or infectious diseases of animals." The only assignment of error which it is necessary to consider is that which relates to the refusal of the court below to quash the indictment. There can be no pretense that the indict-

ment charged a common-law offense and the only question is whether it sufficiently averred a violation of the provisions of the act of 1895.

The indictment charged in substance that the defendant "being then and there the owner and in possession of six certain cows which had been condemned by a certain regular authorized agent and officer of the State Live Stock Sanitary Board of Pennsylvania as having a certain dangerous, contagious and infectious disease, to wit, tuberculosis, and then and there quarantined by said officer and agent, and being then and there duly notified in writing by said officer and agent of said quarantine . . . .; did then and there willfully and unlawfully sell and dispose of five of the six cows so quarantined, as aforesaid," etc. The learned counsel representing the commonwealth base their argument in support of the sufficiency of this indictment upon the ground thus stated in their brief: "The charge substantially is that the defendant disregarded the quarantine established by the officer and agent of the State Live Stock Sanitary Board and violated said quarantine by selling and disposing of five of the six cows which were the object of said quarantine." Upon the case as thus presented two questions arise: (1) Does the act of 1895 authorize an "officer and agent" of the board to establish a quarantine of cattle, and (2) did the sale of the cattle while in quarantine violate any rule or regulation which the statute authorized the board to make. We may here observe that this offense, if any, was committed and the case was tried before the approval of the Act of April 27, 1909, P. L. 189, and that statute has no bearing upon the question which we are now considering. Counsel representing the commonwealth contend that this indictment is to be sustained under the second section of the act of May 21, 1895, the material provisions of which are as follows: "That it shall be the duty of the State Live Stock Sanitary Board to protect the health of the domestic animals of the state, to determine and employ the most efficient and practical means for the prevention, suppression,

control or eradication of dangerous, contagious or infectious diseases among the domestic animals, and for these purposes it is hereby authorized and empowered to establish, maintain, enforce and regulate such quarantine and other measures relating to the movements and care of animals and their products, the disinfection of suspected localities and articles, and the destruction of animals as it may deem necessary, and to adopt from time to time all such regulations as may be necessary and proper for carrying out the purposes of this act." The power to establish quarantine is thus directly conferred upon the board, but the statute itself does not confer such power upon any mere employee of the board, nor does it authorize the board to delegate to its mere subordinates the powers with which it was by the statute clothed. The Act of June 3, 1885, P. L. 56, entitled, "An act to establish a State Board of Health for the better protection of life and health, and to prevent the spread of contagious and infectious diseases in this Commonwealth," conferred upon the state board of health power "to order nuisances or the cause of any special disease or mortality to be abated and removed, and to enforce quarantine regulations as said board shall direct," and, also, "power to enforce such regulations as will tend to limit the progress of epidemic diseases." The powers to enforce quarantine regulations and to order nuisances or the cause of any special disease or mortality to be abated were thus associated in the same grant of authority to the state board of health. The question whether the state board. of health could delegate to its agents or employees the discretion to exercise the authority thus conferred by the statute upon the board arose and was directly passed upon by the Supreme Court in Com. v. Yost, 197 Pa. 171, and it was there held that the exercise of the powers conferred must be by formal action of the board and that without such action its employees have no authority to either speak or act. The principles recognized by that decision must be accepted as ruling this case, and we, therefore, hold that a mere agent and

officer of the state live stock sanitary board had no authority, at the time stated, to declare and enforce a quarantine of cattle.

The power which the act of 1895 conferred upon the board "to establish, maintain, enforce and regulate such quarantine and other measures relating to the movements and care of animals and their products," was manifestly for the purpose of enabling the board to isolate diseased or suspected cattle, and thus prevent their communicating disease to other cattle with which they might otherwise come in contact. Let it be conceded that the grant of power was valid, the regulations which the board was thus empowered to make were such only as related to the location, movements and physical surroundings of the cattle. The statute did not vest the board with power to make a regulation which would deprive an owner of quarantined cattle of the right to sell or transfer his title to another who was willing to pay the price agreed upon and take the chances of the cattle being restored to health or being lawfully relieved from quarantine. The mere sale of the cattle, so long as they remained physically confined, did not involve a violation of any regulation which this statute authorized the live stock sanitary board to make. This indictment did not charge the defendant with anything which was by the act of 1895 made unlawful.

The judgment is reversed and the defendant is discharged without day.